UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| H.C. DUKE & SON, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11-cv-04006-SLD-JAG |
| | ) |
| PRISM MARKETING CORP., et al, | ) |
| | ) |
| Defendants. | ) |

ORDER

This case involves a contract dispute between Plaintiff H.C. Duke & Son, LLC ("Duke"), a Delaware Corporation with its principal place of business in East Moline, Illinois, and co-Defendants Prism Marketing Corporation ("Prism"), a Nevada Corporation with its principal place of business in Las Vegas, Nevada, Superior Quality Equipment, Inc. ("Superior"), a California corporation with its principal place of business in Corona, California, and Steven Levine, a resident of Washington (collectively, the "Defendants"). The Court has diversity-based jurisdiction pursuant to 28 U.S.C. § 1332.

Presently before the Court is Defendants' Motion to Dismiss. (ECF No. 38.) For the reasons set forth below, the Court DENIES the Motion.

I. **BACKGROUND**

On August 25, 2003, Plaintiff and Prism entered into the Distributorship Agreement (the "Duke-Prism Distributor Agreement") for Electro Freeze, a line of soft-serve ice cream machinery. (*See* Second Amended Complaint (hereafter referred to as "Sec. Am. Compl."), Ex. A, ECF No. 37.) Under the Duke-Prism Distributor Agreement, Prism would actively promote the sale and distribution of Plaintiff's Electro Freeze equipment throughout various counties in

California and Nevada. (*Id.*) The Agreement included an explicit termination clause, allowing either party to terminate the contractual relationship by providing thirty days written notice by certified or registered mail. (*Id.*) The Agreement also provided that outstanding balances were due within thirty days of the invoice date. (*Id.*)

Beyond the disputed Duke-Prism Distributor Agreement, three other agreements are implicated in this case. First, Steven Levine signed a "Personal Guarantee to H.C. Duke & Son, Inc." for any unpaid debt owed by Prism (the "Levine Personal Guarantee"). (Sec. Am. Compl. Ex. C.) Second, on September 16, 2010, Plaintiff entered into a "Security Agreement" with Superior, allowing Plaintiff to enforce payment upon any future default by Superior (the "Superior-Duke Security Agreement"). (Sec. Am. Compl. Ex. D.) The Superior-Duke Security Agreement included a term specifying that it was to be interpreted pursuant to the California Commercial Code. (*Id.*) Third, on October 29, 2010, Plaintiff entered into a separate "Security Agreement" with Prism (the "Prism-Duke Security Agreement"). (Sec. Am. Compl. Ex. F.) Clause 24 of the Prism-Duke Security Agreement specified that Nevada Uniform Commercial Code would govern the default interpretation of any contractual language. (*Id.*)

The parties' dispute arose from an alleged breach of contract. Plaintiff claims that it sold certain goods to Prism pursuant to the Duke-Prism Distributor Agreement but Prism never paid for them. (Sec. Am. Compl. ¶ 4.) In a letter dated January 18, 2011, Plaintiff informed Prism and Superior of its intention to terminate their business relationships pursuant to the provision governing termination in the Duke-Prism Distributorship Agreement. (Sec. Am. Compl. ¶ 12, Ex. B.) Prism and Superior contend that the letter did not provide proper notice of Plaintiff's intent to terminate because it did not comply with the manner of notice specified in the Duke-

2

Prism Distributorship Agreement. (Sec. Am. Compl. ¶ 13.) As such, Prism and Superior contend that the Duke-Prism Distributorship Agreement remains in force.

Plaintiff filed its initial complaint on February 2, 2011, seeking declaratory relief and a determination of breach of contract under the Duke-Prism Distributorship Agreement and additional relief under the Levine Personal Guarantee and security agreements. (ECF No. 1.) On March 31, 2011, Defendants filed a Motion to Dismiss the initial complaint. (ECF No. 11.) That motion was denied, but thereafter the parties jointly sought and were granted leave for Plaintiff to file an amended complaint. (*See* ECF No. 20; June 20, 2011 Text Order.)

Plaintiff filed the Amended Complaint on June 23, 2011, and Defendants responded with another motion seeking dismissal or, in the alternative, a more definite statement. (*See* ECF Nos. 21, 23.) Instead of opposing the motion to dismiss, Plaintiff sought permission to file a Second Amended Complaint to address Defendants' assertions that it failed to adequately state certain claims, including that it was deficient in its factual allegations regarding Plaintiff's alter ego allegations. (*See* Mot. and Am. Mot. for Leave to File Sec. Am. Compl., ECF. Nos. 28, 30.) Leave was granted and on September 26, 2011, Plaintiff filed a Second Amended Complaint. Specifically, in the Second Amended Complaint Plaintiff expanded on its alter ego allegations with the following facts:

> Plaintiff is informed and believes and thereon alleges there is such a unity of interest and ownership between Defendants Prism and Superior such that any individuality and separateness between them have ceased, and that Superior is the alter ego of Prism in that Plaintiff is informed and believes and thereon alleges that: (1) Superior was not adequately capitalized, (2) the assets and management of the two (2) Defendants, Prism and Superior, have been intermingled, and (3) required corporate formalities as between the two (2) corporate entities have not been maintained, such that Superior is merely a sham in order to evade liability that otherwise would rest with Prism. Levine, Prism and Superior have intentionally schemed to squirrel assets into Superior, in an attempt to remove assets from the ownership and control of Prism, so as to prevent Plaintiff from satisfying any judgment obtained against Prism. By their actions, Levine, Prism

> and Superior have abused the corporate form such that adherence to the fiction of two (2) separate corporate entities would promote injustice.

(Sec. Am. Compl. ¶ 6, ECF No. 37.)

Plaintiff's Second Amended Complaint seeks relief for five discrete causes of action. First, Plaintiff seeks a declaratory judgment as to their relationship with Prism and Superior in view of the January 18, 2011 letter purporting to exercise the termination provision of the Duke-Prism Distributorship Agreement. (Sec. Am. Compl. ¶ 10-15.) Second, Plaintiff alleges a breach of contract, claiming that Prism failed to pay past invoices in the amount of $899,881 and, as Prism's alter ego, Superior is liable for the debt. (Sec. Am. Compl. ¶ 16-20.) Third, Plaintiff alleges Levine breached the Levine Personal Guarantee as he has not paid the debts owed by Prism. (Sec. Am. Compl. ¶ 21-26.) Fourth, Plaintiff seeks foreclosure on all collateral specified in the Prism-Duke Security Agreement. (Sec. Am. Compl. ¶ 27-30.) Finally, Plaintiff seeks foreclosure on all collateral specified in the Superior-Duke Security Agreement on the grounds that Superior is liable as the alter ego of the indebted Prism. (Sec. Am. Compl. ¶ 31-34.) As relief for these five counts, Plaintiff seeks judgment against Prism, Superior, and Levine in the amount of $899,881 plus interest at the legal rate allowed by Illinois law.

In response to the Second Amended Complaint, Defendants moved to dismiss Superior from the first and second causes of action as well as to dismiss the fifth cause of action in its entirety as to all Defendants pursuant to FRCP 12(b)(6). (Mot. to Dismiss, ECF No. 38.) Defendants argue that Plaintiff failed to plead sufficient facts to support its contention that Superior is the alter ego of Prism under Nevada law. (Mot. to Dismiss ¶ 1.) Defendants also allege that Plaintiff failed to sufficiently plead facts that would demonstrate that Superior is the alter ego of Prism for the purposes of the Superior-Duke Security Agreement under California law. (Mot. to Dismiss ¶ 2.)

II.  ANALYSIS

A motion to dismiss pursuant to Rule 12(b)(6) evaluates the sufficiency of the allegations presented in the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)), and must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))(quotations omitted). The pleader is not required to set forth detailed allegations, but the claim must be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim satisfies the facial plausibility standard when the factual allegations allow the court to draw a "reasonable inference" that the purported misconduct occurred. Id. But, a mere "formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555.

The complaint does not need to allege "all, or any, of the facts logically entailed by the claim and it certainly need not include evidence." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The factual allegations of the complaint are presumptively true and are viewed in the "light most favorable to the plaintiff." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (citation omitted).

Here, Plaintiff makes sufficient factual allegations about the relationship between Prism and Superior. In particular, the Second Amended Complaint alleges that Superior is an alter ego of Prism and "there is such a unity of interest and ownership between Defendants Prism and Superior such that any individuality and separateness between them have ceased . . . ." (Sec. Am. Compl. ¶ 6.) Plaintiff further alleges that Superior was not adequately capitalized, the assets and management of the two corporations are intermingled, and corporate formalities have not been maintained between Superior and Prism because Superior is a sham corporation whose

purpose is to assist Prism in evading liability. (*Id.*) Finally, Plaintiff claims that the three co-Defendants schemed to remove assets from Prism, preventing the satisfaction of any judgment obtained against the corporation. (*Id.*)

### A. The First and Second Causes of Action and Nevada Law on Alter Ego Liability

Defendants argue that Plaintiff's first and second causes of action fail to satisfy Nevada requirements for an alter ego theory. To begin, Defendants assert that Illinois choice-of-law rules require Plaintiff's alter ego theory to be governed by the law of the incorporating state. (Def.'s Mem. in Supp. of Mot. to Dismiss 3-4.) Accordingly, because Prism was incorporated in Nevada, Defendants insist that Nevada law is controlling. (*Id.*) Yet, even if the Court were to accept this argument and apply Nevada law, Plaintiff's factual allegations would still satisfy the pleading requirements.

Under Nevada law, Plaintiff must demonstrate three elements to satisfy an alter ego theory. These three straightforward elements require that:

> (1) The corporation must be influenced and governed by the person asserted to be its alter ego[;] (2) [t]here must be such unity of interest and ownership that one is inseparable from the other; and (3) [t]he facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.

*Truck Ins. Exchange v. Palmer J. Swanson*, 189 P.3d 656, 660 (Nev. 2008). Defendants argue that Plaintiff's allegations do not satisfy these three elements. The Court disagrees. The Court can see no material difference between the particular language of Nevada's alter ego law and the reasonable inferences that can be drawn from the factual allegations set forth in Plaintiff's Second Amended Complaint. *See Las Vegas Police Dept. Health and Welfare Trust v. P & P*, No. 2:11-cv-00734-RCJ-PAL, 2011 WL 6106411, at *7 (D. Nev. Dec. 7, 2011) (explaining that factual allegations of the creation and the intermingling of funds by direct payment from one

entity to another was sufficient to allege an alter ego theory in response to a motion to dismiss); *Kabins Family LP v. Chain Consortium*, No. 2:09-cv-01125-GMN-RJJ, 2010 WL 3001890, at *5 (D. Nev. July 27, 2010) (the court denied a motion to dismiss because factual allegations of shared ownership and shared profits between entities raised sufficient questions of fact as to plaintiff's alter ego theory); *Fairbanks Gold Mining, Inc. v. D & D Tire, Inc.*, No. 3:10-cv-00492-ECR-WGC, 2011 WL 4479692, at *5 (D. Nev. Sept. 23, 2011) (factual allegations that entities are affiliated and controlled by the same people, even if "probably insufficient" to ultimately prove an alter ego claim, are sufficient for an inference of alter ego liability and to overcome a motion to dismiss). More specifically, Defendants' arguments attempting to create a material distinction between Nevada's "influenced and governed" standard and Plaintiff's factual allegation that the assets and management of Prism and Superior are intermingled are without merit. Plaintiff's additional allegations of failed corporate formalities, a scheme to squirrel away resources, and abuse of the corporate form provide facts that further satisfy the remaining requirements of showing alter ego under Nevada law.

### B. The Fifth Cause of Action and California Law on Alter Ego Liability

Defendants also argue that Plaintiff's fifth cause of action fails to sufficiently plead Superior is the alter ego of Prism under California law. (Def.'s Mem. in Supp. of Mot. to Dismiss 11.) Defendants claim that the Superior-Duke Security Agreement specifies California Commercial Code as controlling and, accordingly, California choice-of-law rules apply. (*Id.*) Because California applies a "governmental interest" analysis and Superior is located in California, Plaintiff allegedly must satisfy California requirements to demonstrate an alter ego theory under this agreement. (*Id.*) Even if the Court were to accept this line of reasoning, the

Court remains equally unpersuaded by Defendants' argument that Plaintiff's pleading fails to satisfy California requirements.

Under California law, Plaintiff must demonstrate two elements to prove an alter ego theory: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Pac. Mar. Freight, Inc. v. Foster*, 10-CV-0578-BTM-BLM, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010) (quoting *Automotriz Del Golfo De California S.A. De C.V. v. Resnick*, 306 P.2d 1, 3 (Cal. 1957)). Again, the Court finds no material shortcoming in the allegations set forth in Plaintiff's Second Amended Complaint in light of California's legal standard for demonstrating that one entity is the alter ego of another. *See Fed. Reserve Bank of San Francisco v. HK Sys.*, No. C-95-1190, 1997 WL 227955, at *6 (N.D. Cal. Aug. 24, 1997) (noting that various factual allegations may satisfy the two-prong alter ego test, including the manipulation of assets, the failure to adequately capitalize, the use of one corporation as a shell, and the failure to maintain corporate records and legal formalities); *Lincoln Imps. Inc. v. Weaver Flower Co.*, No. SACV 11-1098-JST (ANx), 2012 WL 1048531, at *4 (C.D. Cal. March 27, 2012) (finding that the party adequately pled an alter ego claim when they alleged a failure to adequately capitalize, a disregard for corporate formalities, and a possible unjust result by upholding the corporate veil). Specifically, Plaintiff's allegations of intermingled management and failure to maintain corporate formalities almost explicitly satisfy the "unity of interest and ownership" element required by California law. Additionally, the "injustice" claimed by Plaintiff is effectively an explicit statement that satisfies

the "inequitable result" standard. Consequently, the Court finds no basis in California law to dismiss count five of the Second Amended Complaint.[1]

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss.

Entered this 9th day of July, 2012.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE

---

[1] Although Defendants set forth additional arguments regarding the statutory language and the merits of Plaintiff's claim, the Court need not evaluate them. In ruling on a 12(b)(6) motion, the sole purpose of the Court is to determine whether Plaintiff's factual allegations create a plausible claim. *See Tolliver v. PPG Indus., Inc.*, No. 11-2302, 2012 WL 1982702, at *2 (C.D. Ill. May 15, 2012) ("[t]he purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, not to decide the merits of the case.").