UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| H.C. DUKE & SON, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11-cv-04006-SLD-JAG |
| | ) |
| PRISM MARKETING CORPORATION, | ) |
| SUPERIOR QUALITY EQUIPMENT, INC., | ) |
| STEVEN LEVINE, and DOES 1 to 100, | ) |
| | ) |
| Defendants. | |

ORDER

Plaintiff H.C. Duke & Son, LLC's seeks, among other things, a declaratory judgment as to its rights and duties under a Distributor's contract it entered into with Defendant Prism Marketing Corporation. Duke claims that it properly terminated the agreement; Prism disagrees. Duke further seeks relief against Prism and Defendant Superior Quality Equipment, which Duke alleges to be Prism's alter ego, for breach of contract as well as to foreclose on security interests in collateral held by Duke and Prism. Finally, Duke seeks to enforce an alleged agreement by Defendant Steven Levine to personally guarantee payment of Prism's debts to Duke.

Defendant Prism counterclaimed, alleging breach of contract, multiple counts of fraud, tortious interference, and violation of Illinois and California franchise statutes. Now before the Court is Duke's Motion to Dismiss several of Prism's counterclaims. Duke's Motion for Leave to File Replies, ECF No. 75, Ex. 1, is GRANTED; ECF No. 75, Ex. 2, is moot in light of Order of July 25, 2013, ECF No. 104. For the reasons set forth below, the Court GRANTS in part and DENIES in part Duke's Motion to Dismiss, ECF No. 67.

## BACKGROUND

Duke produces and distributes a line of soft-serve ice cream machinery and related equipment marketed under the Electro Freeze trademark. On August 25, 2003, Duke and Prism executed an Electro Freeze Distributor's Agreement ("Agreement") under which Prism would distribute Duke's equipment. The equipment was to be shipped from Illinois to portions of California and Nevada. The agreement expressly prohibited modifications of its terms unless the modification was in writing and signed by both parties. Prism argues that Duke waived this written-modification requirement through an attempted oral modification. Duke's performance allegedly modified the Agreement whereby Duke agreed to correct and/or credit Prism for defective equipment supplied by Duke. The Agreement provides for one-, two-, and five-year limited warranties for various Duke machine parts. ECF No. 105 at 27, Ex. A. In addition to its attempted modification theory, Prism separately alleges that Duke breached this and other express warranties, a claim not at issue here. ECF No. 64 at 20-23.

Eventually, on January 18, 2011, Duke notified Prism that it was invoking the termination provision of the Agreement. Prism allegedly contested this termination. In response, Duke filed a complaint in this Court seeking a declaration of the parties' rights and duties under the Agreement regarding termination and amounts allegedly due Duke under the Agreement, as well as to foreclose security interests Duke held in Prism and Superior assets. Duke filed an amended complaint on June 23, 2011, followed by a second amended complaint on September 26, 2011. On July 30, 2012, Defendants filed their Answer, wherein Prism included a nine-count counterclaim against Duke. Prism filed an amended counterclaim on September 21, 2012, which is the operative pleading here, ECF No. 64. On October 5, 2012, Duke moved to dismiss Counts II, III, IV, V, VI, VII, VIII and IX of Prism's amended

counterclaim for failure to state a claim. Duke's Motion to Dismiss, ECF No. 67, is now before the Court.

## DISCUSSION

### I. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The pleading may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Seventh Circuit has identified the practical requirements of *Twombly* and *Iqbal* for federal pleading:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### II. Counterclaims

Duke has moved to dismiss the following of Prism's counterclaims: Count II (Breach of Agreement—Course of Performance), Count III (Fraud), Count IV (Illinois Consumer Fraud Act), Count V (Fraudulent Concealment), Count VI (Tortious Interference With Contractual Relations), Count VII (Tortious Interference With Prospective Economic Advantage), Count

VIII (Violation of Illinois Franchise Disclosure Act of 1987), and Count IX (Violation of California Franchise Relations Act). The Court will address each in turn.

### A. Breach of Contract

Count II of Prism's counterclaim alleges that Duke breached a term of the Agreement that was established through an attempted oral modification. ECF No. 64 at 23. Duke argues that this claim should be dismissed because the Agreement prohibits modifications unless they are in writing and signed by both parties. The Agreement provides: "No changes, modifications, or alterations of the terms of this Agreement, except as otherwise herein provided, shall be valid and binding unless reduced to writing and signed by both Duke and the Distributor." ECF No. 105, Ex. A at ¶ 13. In this provision, Duke argues, the parties contracted away the ability to modify the terms of the Agreement through course of performance alone. The Illinois Commercial Code generally enforces such a restriction on unwritten modifications. *See* 810 ILCS 5/2-209(2) ("A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a writing on a form supplied by the merchant must be separately signed by the other party.")

Prism counters that Duke waived the prohibition on unwritten modifications. The same provision of the Illinois Commercial Code that recognizes restrictions on unwritten modifications also provides that an attempted unwritten modification "can operate as a waiver." 810 ILCS 5/2-209(4). The Comment to section 209 indicates that subsection 4 is intended "to prevent contractual provisions except as through signed waiver from limiting in other respects the legal effect of the parties' actual later conduct." *Id*. cmt. 4. When a party alleges that an attempted modification constituted a waiver, that party must show either (1) it reasonably relied on the other party's waiver of the requirement of a writing or (2) that the waiver was clear and

unequivocal. *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 297-98 (7th Cir. 2002) (citations omitted).

To defeat Duke's Motion to Dismiss, therefore, Prism must plausibly allege that Duke waived the Agreement's ban on unwritten modifications because either it reasonably relied on Duke's purported waiver, or that Duke clearly and unequivocally waived the ban on unwritten modification provision. In this case, Prism alleges that it reasonably relied on Duke's attempted modification. Prism pleaded that the parties' conduct established an unwritten understanding, "whether or not so specified" in the Agreement, that it was to be credited for its expenses to repair or replace defective equipment supplied to it by Duke. The credit line to Prism was to increase in accordance an oral agreement with Duke. ECF No. 64 at 23-24. Prism further alleged that it performed its duties under this unwritten understanding, with Duke's knowledge and acquiescence, but Duke failed to provide the agreed-upon credit. ECF No. 64 at 24. Thus, Prism has made allegations which, accepted as true at this stage, stake out a plausible claim that Duke waived the written modification requirement and Prism reasonably relied on this waiver. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Accordingly, Duke's Motion to Dismiss Count II is denied.

### B. Fraud and Related Claims

Defendants' counterclaims include fraud (Count III), violation of the Illinois Consumer Fraud Act (Count IV) and fraudulent concealment (Count V). These claims of, and sounding in, fraud fail to meet the heightened pleading standard required under the Federal Rules.

The Federal Rules of Civil Procedure impose a heightened pleading standard for fraud claims, requiring that a party "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This particularity has been described as requiring that the party alleging fraud

provide the "who, what, when, where and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Specifically, this means alleging (1) the identity of the person who made the misrepresentation, (2) the time, place, and content of the misrepresentation, and (3) the method by which the misrepresentation was communicated to the plaintiff. *Windy City Metal Fabricators v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (internal citation and quotation marks omitted). In addition to preserving a defendant's reputation against unfounded charges of fraud, *Ackerman v. Northwest Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999), the fundamental concern of providing fair notice drives Rule 9(b) and necessitates this specificity, see *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). The party alleging fraud must "reasonably notify the defendants of their purported role in the scheme." *Id*. at 778.

Count III of Prism's counterclaim charges Duke's "representatives" with making misrepresentations in "2009, 2010 and/or the first month of 2011." ECF No. 64 at 26. Prism provides an overly broad 25-month time range during which the fraudulent communications allegedly occurred and thus does not establish the "when" needed for particularity. Nor does "representatives" sufficiently establish the identity of the person making the alleged misrepresentation. *See Vicom*, 20 F.3d at 778 (criticizing a complaint that did not state which company representative made the misrepresentation and on what date). Further, while long on the substance of the alleged misrepresentations, Prism's counterclaim omits any place, particular mode of communication, or other specific details regarding the alleged fraudulent communications that would grant Duke adequate notice of its individual representatives' particular conduct at issue. Count III thus lacks the specificity mandated by Rule 9(b).

Count IV of the counterclaim asserts that Duke's conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*. Section 2 of the ILCFA bars "unfair methods of competition and unfair or deceptive acts or practices." *Id*. § 2. A claim of merely "unfair practices" under the ILCFA will not necessarily implicate fraudulent conduct and thus Rule 9(b). *Windy City Metal Fabricators & Supply, Inc*., 536 F.3d at 670. However, Prism alleges that Duke engaged in "Deceptive Practices," specifically, a series of misrepresentations upon which Prism detrimentally relied. ECF No. 64 at 27. Whether common law or statutory, Rule 9(b) will govern a claim that "sounds in fraud," i.e., that is "premised on a fraudulent course of conduct." *Perelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreens Co*., 631 F.3d 436, 446-47 (7th Cir. 2011) (citation omitted). Thus, because Prism alleged that Duke engaged in a series of misrepresentations in violation of section 2 of the ILCFA, Rule 9(b)'s heightened pleading standard is implicated and Prism must therefore plead Count IV with particularity. *See id*.

As with the common law fraud claim in Count III, however, Count IV also alleges the same unspecified 25-month time period and omits any particular details or Duke agents involved in the alleged deceptive communications. ECF No. 64 at 27. Thus, for the same reasons Count III is dismissed, Count IV similarly fails to meet Rule 9(b)'s pleading standard.

Count V alleges fraudulent concealment. Rule 9(b) also applies to fraudulent concealment claims. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). In addition to the elements of fraudulent misrepresentation, a plaintiff pleading fraudulent concealment "must allege that a defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff." *Id.* (citing *Weidner v. Karlin*, 402 Ill. App. 3d 1084, 1087, 932 N.E.2d 602, 605 (3d Dist. 2010)). Such a duty arises either (1) "if the plaintiff

and defendant are in a fiduciary or confidential relationship" or (2) in a situation in which the plaintiff "places trust and confidence" in the defendant, thus placing the defendant in a "position of influence and superiority," which may arise from "friendship, agency, or experience." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996) (citations omitted).

A fiduciary or confidential relationship exists between an attorney and client, guardian and ward, principal and agent, "and may exist in other cases where one party is heavily dependent upon the advice of another." *Carey Elec. Contracting, Inc. v. First Nat'l Bank of Elgin*, 74 Ill. App. 3d 233, 237-38, 392 N.E.2d 759, 765 (2d Dist. 1979). Such a relationship "must be shown by proof so clear and convincing, so strong, unequivocal and unmistaken that it leads to only one conclusion." *Id.* (citation omitted).

Prism alleges that it was in a confidential or fiduciary relationship with Duke because "Duke had undertaken a position of trust and confidence as to Prism in guiding Prism as to financial, customer and/or business-related matters." ECF No. 64 at 29. However, Prism makes no allegations that it was heavily dependent on Duke's advice, or even that the parties were more closely related than arm's length dealers in a business transaction. "Normal trust" between businesses, even where one has a "slightly dominant" position, does not transmute a formal, contractual relationship into that of a fiduciary. *Carey Elec. Contracting, Inc.*, 392 N.E.2d at 763-64. Even if the parties' agreement was in fact a franchise agreement as elsewhere alleged by Prism, ECF No. 64 at 34, in franchisor-franchisee relationships, operating based on contractual rights and duties, the franchisee generally is not in "the more subservient position" characteristic of a fiduciary relationship. *Oil Exp. Nat., Inc. v. Burgstone*, 958 F. Supp. 366, 371 (N.D. Ill. 1997) (citation omitted). In the absence of further allegations on point, Prism has insufficiently alleged the existence of a fiduciary or confidential relationship.

The standard for identifying the second option, a special relationship of trust of confidence, is "very similar" to that of a fiduciary relationship. *Benson v. Stafford*, 407 Ill. App. 3d 902, 918, 941 N.E.2d 386, 402 (1st Dist. 2010). State and federal courts in Illinois rarely find such an informal relationship to exist in the absence of a formal fiduciary relationship. *Wigod*, 673 F.3d at 571-72 (surveying federal and state cases on point). The bar is high: the party accused of fraudulent concealment must "exercise 'overwhelming influence' over the defendant." *Id.* (quoting *Miller v. Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 657, 762 N.E.2d 1, 14 (1st Dist. 2001)). Factors to be considered are: "the degree of kinship of the parties; any disparity in age, health, and mental condition; differences in education and business experience between the parties; and the extent to which the allegedly servient party entrusted the handling of her business affairs to the dominant party, and whether the dominant party accepted such entrustment." *Mitchell v. Norman James Constr. Co.*, 291 Ill. App. 3d 927, 934, 684 N.E.2d 872, 879 (1st Dist. 1997).

Prism claims it had "placed trust and confidence in Duke, thereby placing Duke in a position of influence and superiority." ECF No. 64 at 29. However, Prism provides no further details concerning disparity of position or entrustment. At most, a disparity in information could be inferred from Prism's claim that Duke concealed material information. *Id.* at 28-29. However, "asymmetric information alone does not establish the degree of dominance necessary to establish a special trust relationship." *Wigod*, 673 F.3d at 573. Further, Prism alleges no dealings with Duke prior to entering the distributorship agreement that would have established a relationship of trust, nor "particular facts arising from the [parties' relationship] to indicate overwhelming influence" on Duke's part. *See Miller*, 762 N.E.2d at 14. Finally, the special trust standard is closely similar to that of a fiduciary relationship, *Benson*, 941 N.E.2d at 403, which

did not exist between the parties, as already discussed. For these reasons, Prism has failed to aver factual allegations sufficient to state a claim of fraudulent concealment by Duke.

### C. Tortious Interference

Prism also alleges tortious interference with contractual relations (Count VI) and tortious interference with prospective economic advantage (Count VII). Duke argues that because both counterclaims include references to fraudulent activity, ECF No. 64 at 31, 33, both claims also sound in fraud and should be dismissed for lacking the specificity required by Rule 9(b). Prism implicitly denies this assertion by arguing that the counterclaims suffice under the general, lower pleading standard of Rule 8(a). ECF No. 73 at 6-7, 10-12.

As mentioned, Rule 9(b) applies to any averment of fraud or sounding in fraud, and thus whether Rule 9(b) governs depends on the claim's factual allegations. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). If a party alleges both fraudulent and nonfraudulent conduct violating the same statute, only the fraudulent violation is analyzed under Rule 9(b). *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003). The nonfraudulent averment stands so long as it passes muster with general pleading standard of Rule 8(a). *See id.*; *Windy City Metal Fabricators & Supply, Inc.*, 536 F.3d at 670. Tortious interference claims are not by definition fraudulent torts. *See Borsellino*, 477 F.3d at 507. Therefore, Prism's factual allegations must be parsed to determine which amount to averments of fraud and which do not.

#### 1. Tortious Interference With Contractual Relations

Count VI alleges tortious interference with contractual relations. The specific tortious conduct is Duke's alleged inducement of a third party, Wienerschnitzel, to breach its contract with Prism and buy directly from Duke, rather than through Prism. ECF No. 64 at 30, ¶ 53.

Prism asserts that Duke "acted with oppression, fraud, and malice, with the intent to unlawfully deprive Prism of monies and valuable assets and business relationships …." *Id*. at 30, ¶ 57.

In Illinois law, tortious interference with contractual relations requires: "1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Servs., Inc. v. Mt. Vernon Hospital, Inc*., 545 N.E.2d 672, 676 (Ill. 1989) (quoting *Prudential Ins. Co. of America v. Van Matre*, 158 Ill. App. 3d 298, 304-05, 511 N.E.2d 740, 744 (5th Dist. 1987) (internal quotation omitted)). Prism made allegations reaching all of these elements: (1) there was a valid, enforceable contract between Prism and Wienerschnitzel to provide Electro Freeze equipment; (2) Duke was aware of the contract; (3) Duke intentionally and unjustifiably induced breach of the contract by refusing to deal through Prism and selling directly to Wienerschnitzel; (4) Duke's conduct caused Weinerschnitzel to breach its contract with Prism; and (5) Prism suffered lost income as a result. ECF No. 64 at 30-31.

Prism does not provide any details about the claim of fraud outside of the threadbare inclusion of the term itself. *Id*. at 30, ¶ 57. But tortious interference with contractual relations does not require a knowing misrepresentation. *See HPI Health Care*, 545 N.E.2d at 676. Therefore, because a knowing misrepresentation or fraudulent conduct is not an essential element of this cause of action, Prism's allegations currently support a plausible freestanding nonfraudulent claim. To the extent Prism alleges fraud in this Count, Rule 9(b) is not satisfied.

However, Prism's remaining allegations—while perhaps lacking the comprehensive detail demanded by Rule 9(b)—nevertheless meet all the elements of the tort, stating a claim that

11

is both plausible and provides Duke with sufficient notice of the alleged conduct at issue. *See Brooks*, 578 F.3d at 581. Thus, Prism has sufficiently stated its tortious interference with contractual relations claim under Rule 8(a). Accordingly, Duke's Motion to Dismiss Count VI is GRANTED in part as to Prism's allegation of fraud, but otherwise denied.

### 2. Tortious Interference With Prospective Economic Advantage

Count VII alleges tortious interference with prospective economic advantage. The Illinois Supreme Court has defined the elements of tortious interference with a prospective economic advantage as "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional or unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1133-34 (Ill. 2001) (quoting *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996)).

Prism's counterclaim sufficiently alleges the first, second, and fourth elements without dispute. Prism claims: (1) it had a reasonable expectancy of distributing frozen-treat equipment to existing and prospective customers; (2) Prism's ordering practices over the years placed Duke on notice of Prism's transactions to distribute Duke-made equipment to third parties; and (4) Duke's interference with Prism's existing and prospective business relationships harmed Prism in excess of $10,000,000. ECF No. 64 at 31-32.

As for the third element, Prism describes four actions by Duke that allegedly constitute interference inducing termination of expectancy: (1) "wrongfully claiming to have terminated the Distributor's Agreement," (2) "failing to provide non-defective parts and equipment for Prism to provide to its existing and prospective customers," (3) "failing to correct defects in Electro

Freeze[] parts and equipment," and (4) "making false representations designed to adversely affect Prism's business relationships and prospective economic advantages." ECF No. 64 at 32.

The first three actions do not sound in fraud. Thus, they are not governed by Rule 9(b)'s heightened pleading standard, and may survive if they pass muster under Rule 8(a). *See Kennedy*, 348 F.3d at 593. Combined with the other elements of the tort pleaded by Prism, these three theories each stake out plausible claims for relief for tortious interference with prospective economic advantage and provide Duke with sufficient notice of the conduct at issue in the claim, thus meeting Rule 8(a)'s low pleading standard. *See Brooks*, 578 F.3d at 581.

The fourth action alleges a misrepresentation and thus sounds in fraud. Even incorporating by reference Prism's preceding fraud claims, this claim shares their Rule 9(b) pleading flaws—e.g., overly broad time period, lack of specific actors, no mention of place or manner of communications. *See* ECF No. 64 at 31-33. Similarly, Prism's assertion that Duke acted with "fraud" lacks the requisite Rule 9(b) specifics. *See id*. at 33. Duke's Motion to Dismiss is therefore granted as to Prism's false representations claim, but denied as to the remaining claims constituting Count VII.

### B. Illinois Franchise Disclosure Act

Prism argues that the Agreement establishes it as a franchisee of Duke pursuant to the Illinois Franchise Disclosure Act ("IFDA") of 1987, 815 ILCS § 705/1 *et seq*. ECF No. 64 at 34. Count VIII of Prism's counterclaim asserts that Duke violated multiple provisions of the IFDA in its dealings with Prism. ECF No. 64 at 34-35. Duke seeks dismissal of this claim on the grounds: (1) Prism's IFDA claim is time-barred; (2) Duke required no franchise fee of Prism, and therefore there was no IFDA-cognizable franchise agreement; and (3) Prism is not within the class protected by the IFDA.

1. **Statute of Limitations**

The IFDA requires that a private civil action under it be brought by the sooner of (1) three years from the act or transaction constituting the violation at issue, (2) one year after the franchisee becomes aware of facts or circumstances reasonably indicating that he may have a claim for relief under the IFDA, or (3) 90 days after the franchisee receives a written notice disclosing the violation. 815 ILCS 705/27. On January 18, 2011, Duke sent Prism a letter purporting to terminate the Agreement. Because Prism's theory of the IFDA violation is that Duke sought to terminate the putative franchise agreement "prior to the expiration of its term without cause," ECF No. 64 at 35, this termination letter constitutes the allegedly unlawful act, the disclosure of circumstances granting notice of an IFDA violation, and a written notice disclosing the alleged violation, all at once. Thus, the clock would start running upon Prism's receipt of this letter for the shortest of the deadlines, 90 days. *See* 815 ILCS 705/27.

Prism does not dispute that the 90-day statute of limitations may apply to its claim. Instead, it argues that a statute of limitations exception under Illinois law bars Duke from asserting timeliness as a defense. ECF No. 73 at 13. Illinois law allows a defendant to bring an otherwise-time-barred setoff or counterclaim as long as the plaintiff's claim arose before the cause of action brought as a counterclaim became time-barred. 735 ILCS 5/13-207; *Bethlehem Steel Corp. v. Chicago Eastern Corp.*, 863 F.2d 508, 511 (7th Cir. 1988) (citing *Kuh v. Williams*, 13 Ill. App. 3d 588, 593, 301 N.E.2d 151, 154 (1st Dist. 1973)). In other words, if Duke's claim arose before Prism's 90-day window expired, then Prism may be able to assert its otherwise time-barred counterclaim.

Duke's cause of action against Prism for declaratory judgment arose when Prism refused to give effect to the Agreement clause allowing either party to terminate the contract on 30 days'

notice. ECF No. 105 at 6-7. Prism's refusal would have occurred sometime after Duke's written notice of termination on January 18, 2011. If Prism's refusal occurred within 90 days from January 18, 2011, then its claim should be allowed. *See* 735 ILCS 5/13-207. But if it came after 90 days from January 18, 2011, then its claim will be time-barred. Statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1). Because factual scenarios are possible where either or both of Duke's causes of action accrued before the IFDA statute of limitations had run on Prism, Prism has not pleaded itself out of court. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (citations omitted) (noting that a party has not pleaded itself out of court until it must contradict its complaint to succeed on the merits). Therefore, Prism's IFDA violation claim may not be dismissed as time-barred at this time.

### 2. Existence of Franchise Fee

Duke argues that Prism inadequately pleads the existence of a franchise fee requirement in the parties' agreement. ECF No. 68 at 12-13. To qualify as a franchise under the IFDA, an agreement must require that the franchisee pay to the franchisor "directly or indirectly, a franchise fee of $500 or more." 815 ILCS 703/3. The IFDA further defines a "franchise fee," in pertinent part:

> "Franchise fee" means any fee or charge that a franchisee is required to pay directly or indirectly for the right to enter into a business or sell, resell, or distribute goods, services or franchises under an agreement, including, but not limited to, any such payment for goods or services ….[1]

815 ILCS 705/3(14). A franchise fee "may be present regardless of the designation given to or the form of the fee … ." 14 Ill. Admin. Code § 200.104. Further, "[a]ny payment(s) in excess of

---

[1] The IFDA specifies a number of payments that are not franchise fees, most notably: "(c) the purchase or agreement to purchase goods for which there is an established market at a bona fide wholesale price; (d) the payment for fixtures necessary to operate the business; (e) the payment of rent which reflects payment for the economic value of the property; or (f) the purchase or agreement to purchase goods for which there is an established market at a bona fide retail price subject to a bona fide commission or compensation plan." 815 ILCS 705/3(14)(c)-(f).

$500 that is required to be paid by a franchisee to the franchisor … constitutes a franchise fee unless specifically excluded by Section 3(14) of the Act." *Id*. § 200.105.

Thus, the absence of an expressly termed "franchise fee" in the Agreement is not dispositive. *To-Am Equipment Co., Inc. v. Mitsubishi Caterpillar Forklift America, Inc*. 152 F.3d 658, 662-63 (7th Cir. 1998). Prism alleged that it (1) was required to assume the debt of a prior distributor as a condition precedent to entering the Agreement, (2) has made other payments to Duke to "purchase and carry in good and saleable condition" a required "ample stock of Duke's service and repair parts," and (3) has paid Duke for advertising and promotional materials. ECF No. 64 at 19. Prism elsewhere alleges that it was required to pay a franchise fee of $500 or more. *Id*. at 34. Taken together, these allegations state a plausible claim that a franchise fee was paid, and therefore meet Rule 8(a)'s notice pleading standard. *See Brooks*, 578 F.3d at 581.

### 3. Outside Protected Class

Finally, Duke argues that Prism, describing itself as a Nevada corporation with principal place of business in Washington, lacks IFDA protection, as the statute only covers franchisees located in Illinois. ECF No. 68 at 13. The IFDA identifies its purpose as protecting "Illinois residents" who have suffered at the hands of franchisors. 815 ILCS 705/2(1). Accordingly, multiple courts have interpreted the IFDA to "protect Illinois residents only." *Highway Equip. Co. v. Caterpillar, Inc*., 908 F.2d 60, 63 (6th Cir. 1990) (holding that IFDA did not cover a Ohio franchisee's claim against an Illinois franchisor); *see Flynn Beverage, Inc. v. Joseph E. Seagram & Sons, Inc*., 815 F. Supp. 1174, 1178 (C.D. Ill. 1993) (noting that the IFDA's purpose is "to protect Illinois franchisors who have suffered substantial losses to franchisors); *H.R.R. Zimmerman Co. v. Tecumseh Products Co*., 2001 WL 31018302, at *3 (N.D. Ill. Sept. 9, 2002)

("The IFDA's requirements apply only to franchisees located within the state."); *In re Montgomery Ward Catalog Sales Litig.*, 680 F. Supp. 182, 186-87 (E.D. Pa. 1987) (holding that the IFDA's legislative history discloses no intent to extend IFDA protection to franchisees not located in Illinois). Prism claims to be incorporated in Nevada and to have its principal place of business in Washington. The Agreement contemplates Prism distributing Duke products in Nevada and California. ECF No. 105, Ex. A at 13. The only argument Prism makes regarding a claim to be an Illinois franchisee is a recitation of Duke's jurisdictional pleading. *See* ECF No. 64 at 35. That is, the Agreement was entered into in Illinois and to be performed in Illinois to the extent of Duke receiving orders and payment in Illinois, and placing items in shipment "Free on Board" for Prism's receipt outside of Illinois. ECF No. 105 at 3. These allegations—including those cited in Duke's Complaint—do not plausibly give rise to a reasonable inference that Prism is a franchisee located in Illinois. *See Iqbal*, 556 U.S. at 658. Therefore, Duke's Motion to Dismiss is granted as to Prism's claims pursuant to sections 1, 2, 10 and 19 of the IFDA.

Prism additionally asserts a claim under Section 6 of the IFDA, which prohibits fraudulent practices in the offer or sale of a franchise. Section 6 of the IFDA, which prohibits fraudulent practices in the offer or sale of a franchise, provides its own jurisdictional limits. It covers franchise-purchase deals where the offeree is an Illinois domiciliary, the franchisee's business is or will be located in Illinois, *or* the offer or acceptance in the franchise agreement occurs within Illinois.[2] *See* 815 ILCS 705/6. Prism thus argues that Section 6 implicitly covers foreign franchisees where the offer for sale of the franchise occurred in Illinois.

---

[2] Section 6 provides, in pertinent part: "For the purposes of this Section 6, a sale of a franchise is made in this state when: (i) an offer to buy or sell a franchise is made in this State and accepted within or outside of this State, or (ii) an offer to buy or sell a franchise is made outside of this State and accepted in this State, or (iii) the offeree is domiciled in this State, or (iv) the franchised business is or will be located in this State." 815 ILCS 705/6.

However, the Court need not decide whether Section 6, in contrast with other IFDA sections, protects franchisees located outside of Illinois. Because Section 6 prohibits a fraudulent course of conduct, it sounds in fraud and is therefore subject to Rule 9(b)'s heightened pleading standard. *See Perelli Armstrong Tire Corp.*, 631 F.3d at 446-47. In Count VIII, Prism makes no specific allegations regarding the person, manner, time, or place of this fraud, *see Windy City Metal Fabricators*, 536 F.3d at 668, but merely recites the language of Section 6. ECF No. 64 at 34. While Prism incorporates by reference its allegations of fraudulent conduct in preceding Counts, these allegations fail to meet Rule 9(b)'s standard, as described. Therefore, Prism's claim under Section 6 of the IFDA also lacks Rule 9(b)'s requisite specificity, and Duke's Motion to Dismiss is granted as to this claim as well.

### C. California Franchise Relations Act

Duke argues that Count IX of Prism's counterclaim, alleging violations of the California Franchise Relations Act ("CFRA"), should be dismissed both because it is time-barred and because Prism inadequately pleaded the existence of a franchise fee, necessary to invoke the CFRA's protection. The Court rejects both arguments.

#### 1. Statute of Limitations

Duke asserts that Prism's counterclaim under the CFRA must be brought within the limitations periods established in Section 31303 of California Franchise Investment Law ("CFIL"). Cal. Corp. Code § 31303. However, Section 31303 only applies to actions for violations of the CFIL. *Id.* §§ 31300, 31303. Prism's counterclaim only alleges violations of the CFRA. ECF No. 64 at 36-38. Accordingly, whether the CFIL limitations period bars Prism's complaint is not an issue before this Court.

### 2. Existence of Franchise Fee

The franchise fee analysis under the CFRA parallels that under the IFDA. *See supra* Section C2. To qualify as a franchise under the CFRA, the franchisee must be required to pay, "directly or indirectly," a franchise fee. Cal. Bus. & Prof. Code § 20001(c). The CFRA adopts a broad definition of "franchise fee." It is "any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business under a franchise agreement including, but not limited to, any payment for goods or services." Cal. Bus. & Prof. Code § 20007. The provision carves out five categories of potentially requiring a payment that do not count as "franchise fees." *Id*. § 20007(a)-(e). Notably, the payment must exceed $100 on an annual basis or it is not a "franchise fee." *Id*. § 20007(d). Otherwise, a payment may be a franchise fee "regardless of the designation given to, or the form of, such payment." Cal. Corp. Code § 31011. As with the IDFA, Prism has pleaded that it was required to pay a franchise fee. ECF No. 64 at 37, 87. Prism also alleged multiple payments and obligations to Duke which could constitute the requisite franchise fee, such as assuming the debt of a prior Duke distributor or paying Duke for advertising materials. *See* ECF No. 64 at 19. Prism's allegations regarding these expenditures, specifically the requirement to purchase and carry "ample stock" of Duke products, *id.*, raise the reasonable inference that these putative franchise costs amounted to $100 or more annually. *See Iqbal*, 556 U.S. at 658. Thus, Prism has sufficiently pleaded the existence of a franchise fee under Rule 8(a). *See Brooks*, 578 F.3d at 581.

### CONCLUSION

Plaintiff's Motion to Dismiss, ECF No. 68, is GRANTED in part and DENIED in part. Plaintiff's Motion is GRANTED as to Counts III, IV, V, VIII, and portions of Counts VI and VII of Defendant Prism's Amended Counterclaim. Plaintiff's Motion to Dismiss is DENIED as to Counts II and IX, and portions of Counts VI and VII. Plaintiff's Motion for Leave to File

Replies, ECF No. 75, Ex. 1, is GRANTED; ECF No. 75, Ex. 2, is moot in light of Order of July 25, 2013, ECF No. 104. Defendant Prism is GRANTED leave to amend its counterclaim. If it so chooses, Prism must file its amended counterclaim by October 15, 2013.

Entered this 30th day of September, 2013.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE